# FOR PUBLICATION



**FILED**

Dec 31 2013, 9:15 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**FRED SCHULTZ**
Greene & Schultz
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES S. STEPHENSON**
**IAN L. STEWART**
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRAD HASKIN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 39A05-1308-CT-422 |
| | ) | |
| CITY OF MADISON, INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Alison T. Frazier, Judge
Cause No. 39D01-0906-CT-248

**December 31, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Brad Haskin appeals the trial court's summary judgment ruling in favor of the City of Madison, Indiana (the "City"). Haskin raises one issue, which we revise and restate as whether the court erred in granting summary judgment in favor of the City. We affirm.

FACTS AND PROCEDURAL HISTORY

The Madison Regatta includes festivities, events, and boat races on the Ohio River, and thousands of people visit Madison for the event. Haskin was a member of a racing team crew and arrived in Madison on or about July 3, 2008, for the Regatta. Haskin and several others with the team stayed at a rental cottage on Jefferson Street within walking distance of the pit area. On the evening of July 5, 2008, after viewing a fireworks show from the pit area, Haskin and several others began to walk to the rental cottage. They walked east on Vaughn Drive and turned left to walk north on Jefferson Street. An Army PT Cruiser was parked on Jefferson Street very close to the corner and about four or five feet away from the curb. There was "a solid mass of people" leaving the area. Supplemental Appendix at 27. Haskin walked between the curb and the parked vehicle. A cement depression or trough existed as part of the design of the curb on Jefferson Street which sloped downward leading to the sewer. As Haskin stepped onto the depression, the front end of his foot touched the higher portion of the cement, and his heel landed on the lower end of the depression. As a result, he ruptured his Achilles tendon. Additional facts as set forth in the designated evidence will be discussed below.

On June 22, 2009, Haskin filed a complaint for damages against the City which alleged in part that he stepped into a storm sewer drain that had a partial iron grate covering the center of the drain with large openings on either side. The complaint alleged

2

that the City was negligent in designing, constructing, and maintaining the sewer drain, in failing to properly illuminate the drain and provide proper signage warning pedestrians of the condition around it, in the planning and coordination of the special event, and by failing to properly coordinate pedestrian pathways that were free of dangerous conditions. The complaint also alleged that the City knew or should have known that pedestrians would be walking in the streets due to the large crowds and had in fact closed off the streets from vehicular traffic for just this purpose, and that as a direct and proximate result Haskin ruptured his Achilles tendon.

On November 18, 2011, the City filed a motion for summary judgment together with designated evidence and a supporting memorandum. The City argued that it is immune from liability for Haskin's claims pursuant to Ind. Code § 34-13-3-3(18) because the gutter, sewer intake, and concrete trough all remained unchanged for twenty years prior to the accident; that it owed no duty to Haskin because the street where the accident occurred was not within its control at the time as it ceded control of the area to Madison Regatta, Inc. ("MRI") for the event; and that Haskin's claim against the City is barred because he was contributorily negligent. Haskin filed a response and designation of evidence in opposition to summary judgment on February 24, 2012, and argued that the City is not immune under Ind. Code § 34-13-3-3(18) and owed a duty of reasonable care, that the City retained control over its own improvements and did not transfer control of the area to MRI (and was not permitted to delegate its duty to maintain the area), and that his claim is not barred by contributory negligence as there is nothing in the evidence

3

showing that as a matter of law his conduct was negligent or unreasonable. The City filed a reply on February 29, 2012.

The trial court held a summary judgment hearing on April 24, 2012,[1] and on July 30, 2013, entered an order granting the City's motion. The court found that Haskin was injured while walking on Jefferson Street and stepping into a trough-shaped gutter abutting the curb, and that the storm water gutter system was designed more than twenty years prior to July 5, 2008 and therefore the City is immune from liability for Haskin's injuries pursuant to Ind. Code § 34-13-3-3(18). The court further found that the City owed no duty to Haskin because it had transferred control of Jefferson Street in the area where the injury occurred to MRI and thus there could be no negligence on the part of the City. The court also found that Haskin was not paying attention to his surroundings and chose not to remain on the pedestrian sidewalk, that his conduct fell below the standard to which he should conform for his own protection and safety, that therefore he was contributorily negligent, and that his claim against the City is barred. Haskin now appeals.

## ISSUE AND STANDARD OF REVIEW

The issue is whether the trial court erred in granting summary judgment in favor of the City and against Haskin. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts

---

[1] The transcript of the hearing is not included in the record on appeal.

are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.

DISCUSSION

The trial court's summary judgment ruling in favor of the City was premised in part on the conclusions that the City was immune from liability under Ind. Code § 34-13-3-3(18) and that the City did not owe a duty to Haskin relating to Jefferson Street.[2] The

---

[2] In addition, the City argues that Haskin has waived all the issues he raises on appeal because he failed to include in his appellant's appendix the summary judgment motions and briefing as well as the City's designation of evidence. In his reply, Haskin argues that his appendix included all essential parts of the record and all of the facts upon which the trial court relied in entering its summary judgment order and that he read Ind. Appellate Rule 50(A)(1) to mean that this court does not want unnecessary materials submitted. Appellate Rule 50(A)(1) provides that "[t]he purpose of an Appendix in civil appeals and appeals from Administrative Agencies is to present the Court with copies of only those parts of the record on appeal that are necessary for the Court to decide the issues presented." However, as our review is limited to those materials designated to the trial court and we may affirm on any grounds supported by the designated evidence, it is important that the record on appeal include the parties' summary judgment materials, including the parties' designations of evidence. See Yoquelet v. Marshall Co., 811 N.E.2d 826, 829-830 (Ind. Ct. App. 2004) (noting that "when appealing the grant or denial of a motion for summary judgment, the moving party must file with the appellate court those materials that were designated to the trial court for purposes of reviewing the motion for summary judgment"). However, we also note that Ind. Appellate Rule 49(B) provides that "[a]ny party's failure to include any item in an Appendix shall not waive any issue or argument." The City provided the missing designations and summary judgment materials in its appellee's appendix. Haskin presents cogent argument regarding the trial court's summary judgment order and the summary judgment materials, and the appellant's appendix includes

5

tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. Beta Steel v. Rust, 830 N.E.2d 62, 69 (Ind. Ct. App. 2005) (citing Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004)). Summary judgment is appropriate when the undisputed material evidence negates one element of a claim. Rhodes, 805 N.E.2d at 385. In the absence of the existence of a duty, there can be no negligence. Harris v. Traini, 759 N.E.2d 215, 222 (Ind. Ct. App. 2001), reh'g denied, trans. denied.

Haskin argues that, even under Ind. Code § 34-13-3-3(18), a governmental entity has a duty to provide public roadways in a reasonably safe condition and that determination is a question of fact. Haskin further contends that the City owed him a duty to maintain the storm sewer where he was injured and that the Lease Agreement between the City and MRI expressly stated that MRI did not have control over any improvements and could not make any changes to the improvements without express permission. The City maintains that Ind. Code § 34-13-3-3(18) applies to the gutter and storm sewer intake, that the design of the area remained unchanged for more than twenty years prior to the date of the accident, and that the purpose of the statute is to immunize governmental entities for design defects in older roadways. The City notes that Haskin's claim does not arise from any deterioration in the condition in Jefferson Street's gutter, sewer intake or concrete trough, that he was injured due to the slope of the concrete trough, and that the design and placement of the concrete trough and its inclusion into the design and construction of Jefferson Street is subject to immunity. The City also asserts

many or most of the designated documents and portions of depositions necessary to resolve the issues on appeal. Dismissal of Haskin's appeal on this basis is not warranted, and we do not find that Haskin has waived all issues.

that the street where the accident occurred was not within its control at the time of the accident, as evidenced by the terms of the designated Resolution passed by the City's Board of Public Works and the designated Lease Agreement between the City and MRI, that the location Haskin was injured was within the area that had been fenced off in order for MRI to assume control, and that as a result the City owed no duty to Haskin.

With respect to Haskin's claim that the City was negligent in designing or constructing the curb or sewer drain, Ind. Code § 34-13-3-3 provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> (18)  Design of a highway (as defined in IC 9-13-2-73[3]), toll road project (as defined in IC 8-15-2-4(4)), tollway (as defined in IC 8-15-3-7), or project (as defined in IC 8-15.7-2-14) if the claimed loss occurs at least twenty (20) years after the public highway, toll road project, tollway, or project was designed or substantially redesigned; except that this subdivision shall not be construed to relieve a responsible governmental entity from the continuing duty to provide and maintain public highways in a reasonably safe condition.

The designated evidence reveals that Haskin stepped onto the depressed portion of the concrete curb, which was part of the curb's design, sloping downward leading to the sewer, and that as a result he sustained injuries. The designated evidence includes an affidavit and portions of a deposition of Randy Eggenspiller, the City Engineer/Utility Manager for the City. Eggenspiller stated that the gutter, storm sewer intake, and concrete trough are part of the infrastructure of Jefferson Street, that the storm sewer grate at this location was installed in approximately the 1950s or 1960s, and that to his

---

[3] Ind. Code § 9-13-2-73 provides: "'Highway' or 'street' means the entire width between the boundary lines of every publicly maintained way when any part of the way is open to the use of the public for purposes of vehicular travel. The term includes an alley in a city or town."

7

knowledge the streets and storm sewers in and around the intersection, including the street's gutter, storm sewer intake, and concrete trough that diverts water from the gutter to the storm sewer at that location, remained the same and had not been redesigned for a period of more than twenty years prior to July 5, 2008. In his deposition, Eggenspiller testified that storm sewer grates are designed differently today in that the gutter section and grate are flat such that the water will come across the top and drop in so as to prevent leaves and debris from stopping up the gutter sections. Eggenspiller also stated that Jefferson Street was resurfaced in 2002 and that the asphalt did not extend over the concrete gutter.

To the extent Haskin claims the City was negligent in the design of the sewer drain and the City had a duty with respect to that claim, we agree with the City that, pursuant to Ind. Code § 34-13-3-3(18), the City was not required to ensure that the design of the curb and sewer drain, which were designed or redesigned at least twenty years prior to Haskin's injury and were not altered by any resurfacing in 2002, was consistent with current practice or safety standards. The City was not required to redesign the sewer drain in an effort to incorporate ever-evolving technology. See Hiland v. State, 879 N.E.2d 621 (Ind. Ct. App. 2008) (finding that INDOT, under Ind. Code § 34-13-3-3(18), was not required to ensure that roads that were designed or redesigned twenty years prior to the loss meet current safety standards and was not required to redesign roads in an effort to incorporate ever-evolving technology). Haskin does not show that the curb or sewer drain were in a deteriorated condition. The designated evidence demonstrates that the curb and sewer drain were not unreasonably unsafe. The City was immune from

8

liability under Ind. Code § 34-13-3-3(18) with respect to Haskin's claim that it negligently designed, constructed, or maintained the sewer drain.

Moreover, Haskin's other negligence allegations essentially relate to whether the grounds leased to MRI for the Regatta, including Jefferson Street, were properly managed and whether pedestrian traffic was properly conducted. At the time of the accident, MRI and not the City controlled these matters. An owner of property generally is under a duty to keep the property in a reasonably safe condition for invitees and has an affirmative duty to exercise ordinary care to keep the property in a reasonably safe condition coextensive with the purpose and intent of the invitation. Beta Steel, 830 N.E.2d at 70; see Harris, 759 N.E.2d at 225 ("The thread through the law imposing liability upon occupancy of premises is control. Only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring.") (citations, internal quotation marks, and brackets omitted). This court has stated: "In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. . . . Generally, whether a duty exists is a question of law for the court to decide." Beta Steel, 830 N.E.2d at 70 (citing Rhodes, 805 N.E.2d at 385-386)(internal quotation marks omitted).

As noted, at the time of the accident MRI and not the City controlled the matters of which Haskin complains. Further, the designated evidence shows the presence of a streetlight on Vaughn Drive directly across from the area in question and a sidewalk fore

9

pedestrian traffic running alongside Jefferson Street. The designated evidence also includes a Resolution of the Board of Public Works and Safety of the City adopted on June 18, 2008, which resolved that certain streets including the location Haskin was injured "shall be closed from 12:00 p.m. on Tuesday July 1, 2008, to 7:00 a.m. on Monday, July 7, 2008" and that "said streets as closed shall be under *the supervision and control of* [*MRI*] *at the times noted above* for the year 2008." Appellee's Appendix at 17 (emphasis added). In addition, the designated evidence includes a Lease Agreement between the City and MRI entered into on June 4, 2008. The Lease Agreement provided in part that the City would "free from dirt, rubbish, and other obstructions or encumbrances," and that MRI would "take good care of the improvements located on the demised premises and keep them free from waste or nuisance of any kind." Appellant's Appendix at 32. The Lease Agreement also provided that MRI "shall not make any alterations, additions, or improvements to the demised premises without the prior written consent of the [City]" and that MRI would "maintain and pay for general liability insurance to afford protection" in the event of an accident, injury, or death. Id. at 32, 34.

The terms of the resolution and the Lease Agreement demonstrate that the City did not control the streets in the area closed to vehicular traffic during the Regatta. The fact that the Lease Agreement required MRI to obtain the City's consent before making alterations, additions, or improvements does not mean that MRI did not control the condition of Jefferson Street, could not have taken the precautions necessary to protect pedestrians, or could not have obtained the City's consent to make alterations if necessary. The resolution and the Lease Agreement transferred supervision and control

of the property, including the curb and sewer drain on Jefferson Street where Haskin was injured, from the City to MRI for the term of the Regatta, and MRI was in the best position to control the pedestrian traffic and condition of the property it leased from the City. Cf. Thayer v. James Whitcomb Riley Festival Ass'n Inc., 802 N.E.2d 7, 8-12 (Ind. Ct. App. 2003) (noting that the Riley Festival leased booth space to vendors on certain city streets in the City of Greenfield to conduct festival activities and that no contract transferred the duty to maintain the sidewalks from the city to the Riley Festival); Mishler v. State, 730 N.E.2d 229, 231 (Ind. Ct. App. 2000) (holding in part that the State had neither possession nor control of a roadway and was thus in no position to rectify any unsafe condition, that once the roadway was relinquished to the city the State had no duty to the entrants on that roadway, and that summary judgment in favor of the State was proper).[4]

CONCLUSION

With respect to Haskin's claim that the City was negligent in the design, construction or maintenance of the curb or sewer drain, we conclude that the designated evidence demonstrates that the City is immune from liability. With respect to Haskin's other negligence claims, the designated evidence demonstrates that the City did not owe a

---

[4] Ind. Code § 8-23-6-3(d) provides that "[u]pon the completion of a street, the department shall maintain the roadway of the street, including the curbs and gutters, catch basins, and inlets within the limits of the street or highway that form integral parts of the street or highway" and that "[t]he city or town shall maintain the sidewalks, grass plats, and the connecting drainage facilities." To the extent Haskins points to this statute to support his argument that the City owed him a duty, we have concluded above that the City is immune from liability for his claim related to the design and construction of the road and noted that Haskin does not show that the curb or sewer drain were in a deteriorated condition or otherwise not maintained.

11

duty to Haskin as it did not possess or control the condition of Jefferson Street at the time of his injury nor did it manage the pedestrian traffic or other aspects of the Regatta.[5]

For the foregoing reasons, we affirm the trial court's order granting the City's motion for summary judgment.

Affirmed.

ROBB, C.J., and BARNES, J., concur.

---

[5] The court's summary judgment ruling was also based on the conclusion that Haskin cannot recover from the City because he was contributorily negligent. Because we affirm the court's summary judgment ruling on the bases that the City was immune from liability for Haskin's negligent design and construction claims and did not owe a duty to Haskin with respect to his other claims, we need not discuss whether the City was entitled to summary judgment on the ground that Haskin was contributorily negligent.